[No. F050458. Fifth Dist. Oct. 18, 2007.]

EDMONDSON PROPERTY MANAGEMENT, Cross-complainant, v. LIN KWOCK, Cross-defendant.
CALIFORNIA CAPITAL INSURANCE COMPANY, Plaintiff, Cross-defendant and Respondent, v.
FARMERS INSURANCE GROUP, Defendant, Cross-complainant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.

**COUNSEL**

Freitas, McCarthy, MacMahon & Keating, Jeffrey G. Nevin, Shelley A. Kramer; Ellis, Coleman, Poirier, La Voie & Steinheimer, Jeffrey G. Nevin and Mark Ellis for Cross-complainant and for Defendant, Cross-complainant and Appellant.

Grant, Genovese & Baratta and Lance D. Orloff for Plaintiff, Cross-defendant and Respondent.

**OPINION**

**WISEMAN, Acting P. J.**—This is an appeal from a judgment in which the trial court found that appellant Farmers Insurance Group (Farmers) owed contribution to respondent California Capital Insurance Company (Capital) for payment made under Capital's policy pursuant to a negotiated settlement in a personal injury action. The personal injury action (case No. 144149) was filed after a seven-year-old child fell off the roof of a storage shed located adjacent to the apartment she shared with her mother and on property owned by Lin Kwock. Kwock employed Edmondson Property Management (Edmondson) to manage the apartment complex where the child lived. Both Kwock and Edmondson were named as defendants in the personal injury action. Kwock was insured by Capital. Edmondson was an additional insured under the policy by virtue of its role as property manager. Additionally, Farmers insured Edmondson under a general business liability policy. Since both Kwock and Edmondson were insured under the terms of Capital's policy, Capital defended both individuals in the personal injury action. Ultimately, the lawsuit settled within Capital's policy limits, but Farmers refused to contribute to the settlement claiming that the indemnity provision of the property management agreement rendered its coverage excess and to require contribution would be to nullify the indemnity agreement. The trial court disagreed. We affirm.

## *PROCEDURAL AND FACTUAL HISTORIES*

Upon initiation of the personal injury action, Capital provided the defense for both Kwock and Edmondson without reservation of rights. The plaintiffs in the personal injury action made a settlement demand that exceeded Capital's policy limits. Capital notified Edmondson of the demand and suggested that Farmers be notified as a source of excess coverage. Capital also notified Farmers that, under the authority of *Travelers Casualty & Surety Co. v. American Equity Ins. Co.* (2001) 93 Cal.App.4th 1142 [113 Cal.Rptr.2d 613] (*Travelers*), it would seek contribution from Farmers for any amount paid by Capital because Farmers was a primary insurer covering the same risk. A primary policy is one where liability attaches immediately upon the happening of the occurrence. In contrast, excess coverage attaches only after a predetermined amount of primary coverage has been exhausted. (*Reliance Nat. Indemnity Co. v. General Star Indemnity ·Co.* (1999) 72 Cal.App.4th 1063, 1076 [85 Cal.Rptr.2d 627].) As a result, Farmers declared there to be a conflict between Kwock and Edmondson and hired separate counsel for Edmondson. Later, Capital and Farmers agreed to share equally the costs of Edmondson's defense, and Capital reassumed the defense of Edmondson.

Edmondson filed a cross-complaint in the personal injury action against Kwock for indemnification, subrogation, and declaratory relief, asserting that the indemnity provisions of the property management contract governing their relationship required Kwock to fully indemnify Edmondson. Kwock answered and asserted as a first affirmative defense that Edmondson's own negligence contributed to the damages incurred by the child's fall. The complaint in the personal injury action did not distinguish between Edmondson's negligence and Kwock's negligence. Capital at all times acknowledged that Edmondson was an insured under its policy and that it was obligated to defend Edmondson.

The personal injury action settled pursuant to a negotiated agreement in which Capital paid $550,000 to plaintiffs. The agreement, while disclaiming all liability for the child's injuries, apportioned the liability as follows: $50,000 from Kwock and $500,000 from Edmondson. Capital negotiated the agreement on behalf of both Kwock and Edmondson, and the agreement resolved all claims against these two individuals. The agreement did not resolve the cross-complaint filed by Edmondson against Kwock.

Capital then filed an action against Farmers seeking subrogation, contribution, and indemnity for the amount paid to settle the personal injury action (case No. 148024). Farmers filed a cross-complaint seeking equitable subrogation and indemnification for the amounts it expended in defense of the personal injury action. Both parties sought summary adjudication of the

issues presented in the initial cross-complaint and later, separate action. The court granted the cross-motions in favor of Kwock on the cross-complaint in case No. 144149 with respect to the first four causes of action for implied equitable indemnity, comparative indemnity, equitable contribution, and express contractual indemnity asserted by Edmondson. The court found that, because Edmondson had not paid any amount in settlement of the suit or in providing the defense, Edmondson could show no damages in any of the causes of action alleged in the cross-complaint. This ruling is not challenged on appeal. The remaining cause of action on the cross-complaint (for declaratory relief) in case No. 144149, and the new action for subrogation, contribution, and indemnity in case No. 148024, with its cross-complaint for subrogation, were consolidated and tried before the trial court on a stipulated statement of facts and documentary evidence.

In its judgment, the trial court found (1) that the indemnity provision in the property management agreement was a "Type II" provision,[1] indemnifying Edmondson only for passive negligence; (2) because Edmondson had knowledge that the child had played unsupervised on the roof of the shed and had not acted to prevent the fall, its alleged negligence was active, not passive, and the indemnity provision did not apply; (3) that Farmers's policy was not intended to be an excess policy; (4) both policies bore the same level of liability; and (5) each was liable for 50 percent of the settlement paid (rejecting the apportionment of the settlement agreement). The trial court found that Farmers was not entitled to recover any of the costs it incurred in defending Edmondson during the conflict between Farmers and Capital.

## *DISCUSSION*

### *I. Indemnity provision*

█ The crux of the issues presented on appeal is whether the indemnity provision found in the property management contract precludes Capital from seeking contribution from Farmers for the settlement paid. The general rule is that when multiple insurance carriers insure the same insured and cover the same risk, each insurer may assert a claim against a coinsurer for equitable

---

[1] A "Type II" provision was classified as a "general" indemnity clause in *Rossmoor Sanitation, Inc. v. Pylon, Inc.* (1975) 13 Cal.3d 622 [119 Cal.Rptr. 449, 532 P.2d 97] (*Rossmoor*). It is characterized this way because it does not explicitly address the issue of the indemnitee's negligence. (*Id.* at p. 628.) These clauses may be interpreted to cover an indemnitee's passive negligence, but generally will not include an indemnitee's active negligence. (*Ibid.*; see also *MacDonald & Kruse, Inc. v. San Jose Steel Co.* (1972) 29 Cal.App.3d 413, 419–420 [105 Cal.Rptr. 725] [liability arising out of agreed work, or services-of-indemnitee language, is second type of indemnity agreement and does not apply to active negligence by indemnitee].)

contribution when it has undertaken the defense or paid a liability on behalf of the insured. The theory is that the debt paid by one of the insurance carriers was equally and concurrently owed by the other by virtue of the insurance contracts and should be shared by them pro rata in proportion to their coverage of the risk. (*Reliance Nat. Indemnity Co. v. General Star Indemnity Co., supra*, 72 Cal.App.4th at p. 1078.) "The purpose of this rule of equity is to accomplish substantial justice by equalizing the common burden shared by coinsurers, and to prevent one insurer from profiting at the expense of others." (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1293 [77 Cal.Rptr.2d 296].) Equitable contribution is not a matter of contract and exists independently of the insured's rights under the insurance policy. (*Ibid.*) " 'It is not based on any right of subrogation to the rights of the insured, and is not equivalent to " 'standing in the shoes' " of the insured. . . .' " (*Hartford Casualty Ins. Co. v. Mt. Hawley Ins. Co.* (2004) 123 Cal.App.4th 278, 288 [20 Cal.Rptr.3d 128] (*Hartford*).)

■ Some insurance carriers have attempted to avoid this policy by writing into their insurance contracts "other insurance" clauses which attempt to convert primary coverage to excess coverage when other collectible insurance is available to cover the risk. The original purpose of these clauses was to prevent multiple recovery when more than one policy covers a given loss. (*Fireman's Fund Ins. Co. v. Maryland Casualty Co., supra*, 65 Cal.App.4th at p. 1293.) The Farmers policy contains this type of clause. Capital's policy does not. The modern trend is to require contribution where there is the same level of insurance for the same risk, regardless of "other insurance" language. (*Dart Industries, Inc. v. Commercial Union Ins. Co.* (2002) 28 Cal.4th 1059, 1080 [124 Cal.Rptr.2d 142, 52 P.3d 79]; *Commerce & Industry Ins. Co. v. Chubb Custom Ins. Co.* (1999) 75 Cal.App.4th 739, 745 [89 Cal.Rptr.2d 415]; see Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2007) ¶¶ 8:26–8:38, pp. 8-9 to 8-14.) Public policy favors apportionment of loss among those who have contracted to insure against it and, as a result, equity overrides the terms of the insurance contract in these cases. (*Commerce & Industry Ins. Co. v. Chubb Custom Ins. Co., supra*, 75 Cal.App.4th at p. 749; *CSE Ins. Group v. Northbrook Property & Casualty Co.* (1994) 23 Cal.App.4th 1839, 1845 [29 Cal.Rptr.2d 120].) Farmers does not dispute that it issued the policy as a primary insurance liability policy to Edmondson. Since the "other insurance" clause in Farmers's policy is written into an otherwise primary policy, the courts have considered this type of "other insurance" clause as an "escape" clause, a clause which attempts to have coverage, paid for with the insured's premiums, evaporate in the presence of other insurance. (*Commerce & Industry Ins. Co. v. Chubb Custom Ins. Co., supra*, 75 Cal.App.4th at p. 744; *Dart Industries, Inc. v. Commercial Union Ins. Co., supra*, 28 Cal.4th at p. 1080.) Escape clauses are discouraged and generally not given effect in actions

where the insurance company who paid the liability is seeking equitable contribution from the carrier who is seeking to avoid the risk it was paid to cover. (*Dart Industries, Inc. v. Commercial Union Ins. Co., supra*, at p. 1080.)

Apparently recognizing the unlikeliness that its "other insurance" clause would be used to bar the contribution claim, Farmers does not rest its argument on its "other insurance" clause but, instead, on the indemnity provision in the property management agreement. It argues that Farmers and Capital do not equally and concurrently share the liability generated by the child's injury because, pursuant to the negotiated indemnity provision, Kwock assumed the obligation of providing insurance for this particular risk, making Capital the primary insurer and Farmers the excess insurer. According to Farmers, to hold otherwise would nullify the indemnification provision of the property management agreement. (See *Rossmoor, supra*, 13 Cal.3d at pp. 634–635.) In other words, although Farmers's policy was written as a primary policy, the contract between Kwock and Edmondson defeats an *equitable* claim for contribution.

■ To resolve the issue, we must determine whether there is a relationship between the indemnity provision of the insureds' contract and the claim for equitable contribution between insurers. (*Travelers, supra*, 93 Cal.App.4th at p. 1154; *Hartford, supra*, 123 Cal.App.4th at p. 289.) We agree that, in some cases, the presence of an indemnity clause may render one of two primary insurance policies excess to the other. (See *Hartford, supra*, at p. 282.) This is a function of the contractual language and intent of the insureds.

In *Rossmoor, supra*, 13 Cal.3d at page 633, the court was faced with a contractual indemnification provision and a claim for contribution. In *Rossmoor,* the contract between a property owner and a sewage facility contractor included an indemnity provision in favor of the owner. There was an industrial accident after a cave-in of an unshored trench resulting in personal injury and death. The owner and its insured sought indemnification from the contractor and its liability carrier. The owner was an additional insured on the contractor's policy pursuant to the terms of the contract between the owner and the contractor. Later, the contractor's insurer sought apportionment from the owner's insurer under the contractor's policy's "other insurance" provision. The language of the indemnity provision was as follows:

" 'The Owner . . . shall not be answerable or accountable in any manner for any loss or damage that may happen to the work or any part thereof, or for any material or equipment used in performing the work, or for injury or damage to any person or persons, either workmen or the public, or for damage to adjoining property from any cause whatsoever during the progress of the work, or any time before final acceptance of the work.

" 'Contractor . . . shall indemnify and save Owner harmless against all claims for damages to persons or property arising out of Contractor's execution of the work covered by this contract and any and all costs, expenses, attorney's fees and liability incurred by Owner . . . in defending against such claims, whether the same proceed to judgment or not and Contractor at his own expense agrees upon written request by Owner, to defend any such suit or action brought against Owner . . . .' " (*Rossmoor, supra,* 13 Cal.3d at p. 626, fn. 1.)

The contract also required that the contractor obtain insurance covering the work with the owner being named as an additional insured. Both policies had "other insurance" clauses. The California Supreme Court found that the owner's insurance (a primary policy) was excess to the coverage provided by the contractor's policy because of the explicit terms of the indemnity provision and because the owner's negligence was passive and covered by the indemnity provision, which was a general indemnity clause. (*Rossmoor, supra,* 13 Cal.3d at p. 629.) The court found that "to apportion the loss in this case pursuant to the other insurance clauses would effectively negate the indemnity agreement and impose liability on [the owner's insurer] when [the owner] bargained with [the contractor] to avoid that very result as part of the consideration for the construction agreement." (*Id.* at p. 634.) The court also noted that its conclusion required "an inquiry into the circumstances of the damage or injury and the language of the contract" and that "of necessity, each case will turn on its own facts." (*Id.* at p. 633.)

In *Hartford,* the indemnity agreement read as follows: " 'The Insurance maintained by [Hartford's insured] . . . shall insure the performance of [Hartford's insured's] indemnification obligations as set forth herein, but nothing in . . . the insurance . . . shall in any way limit the indemnification provided for hereunder. To the fullest extent permitted by law, [Hartford's insured] shall defend, indemnify and hold [Mt. Hawley's insured] . . . harmless from and against any and all costs, liabilities, losses, expenses, liens, claims, demands and causes of action . . . arising out of or in any way connected with the performance of Work under this Subcontract, . . . except the sole negligence or willful misconduct of [Mt. Hawley's insured] . . . .' " (*Hartford, supra,* 123 Cal.App.4th at p. 289.)

Despite this language, Hartford sought contribution from the other insurer. The court ruled that the indemnity provision would be rendered meaningless if Hartford were permitted to recover against Mt. Hawley pursuant to the insurance policies' "other insurance" provisions or the doctrine of equitable contribution. (*Hartford, supra,* 123 Cal.App.4th at p. 292.) The language specifically linked the indemnity provision with the insurance coverage provided by the contractor and explicitly covered the type of negligence

alleged by the underlying complaint. To allow contribution would nullify this provision and elevate the interests of the insurance companies above the rights of the parties to construct their agreement.

In *Travelers, supra*, 93 Cal.App.4th 1142, the court reached a different result on slightly different facts. The insureds in *Travelers* (a court-appointed property receiver and the property's management company) had negotiated a general third party indemnification provision that read as follows: " 'To hold and save Property Manager free and harmless from all expenses, claims, liabilities, losses, judgments or damages, including reasonable attorneys fees, which Manager may suffer or incur as a result of injury, loss or damage to person or property by reason of any cause whatsoever either in or about the Project or elsewhere, when property manager is carrying out the provisions of this Agreement, or acting under the express or implied directions of the owner.' " (*Travelers, supra*, 93 Cal.App.4th at p. 1147.)

The agreement also had a provision requiring that the receiver procure insurance naming the property manager as an additional insured. This clause read: " 'Receiver shall procure and maintain, throughout the Term, insurance coverage with respect to the Project in amounts and issued by companies approved by Receiver. All cost of insurance will be at the expense of the Project and will name Manager as additional insured. . . .' " (*Travelers, supra*, 93 Cal.App.4th at p. 1146.) This was done. Travelers issued the policy and named the property manager as an additional insured. The property manager was insured independently as well by American Equity. When both the receiver and the property manager were sued, the lawsuit was tendered to Travelers and to American Equity. Travelers accepted the tender without reservation of rights and defended the property manager, ultimately settling the case within its policy limits. Travelers sought contribution from American Equity. The trial court found both companies insured at the same level and ordered contribution. The appellate court agreed and rejected American Equity's argument that these two provisions, when read together or independently, defeated Travelers's claim for contribution because the parties contractually agreed to shift the full risk of liability to Travelers. The court stated that, because it could not determine with certainty from the language of the contract or the appellate record whether the property manager was entitled to indemnity from the receiver or the property owner under the property management agreement, the provision did not bar contribution. The court noted that the "[c]oncern that the indemnity agreement between [the insureds] would be negated by prorating the loss presupposes the determination that the receiver would be liable to indemnify [the property manager] under that agreement." (*Travelers, supra*, 93 Cal.App.4th at p. 1158.)

 As we see it, the question is one of contract interpretation. What conduct or claims did the parties intend by their indemnity agreement to protect the indemnitee against, and did the parties intend to make the insurance obtained by the indemnitor *primary* to any obtained by the indemnitee? If the conduct alleged or claim made falls within the protected categories, and the intent was to make the insurance obtained by the indemnitor primary, then the agreement should be enforced and contribution denied. (See *Rossmoor, supra,* 13 Cal.3d at p. 633; *Hartford, supra,* 123 Cal.App.4th at p. 282.) If either of these prongs is missing, the general policy supporting equitable contribution trumps.

 We now turn to the language of the agreement negotiated between Edmondson and Kwock. The rules governing contract interpretation are well settled. A contract must give effect to the mutual intention of the parties at the time the contract is formed as expressed in the written provisions of the contract. (Civ. Code, §§ 1636, 1639; *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619].)

The contract here provides in a section titled "Owner's Obligations" as follows:

"Owner shall indemnify and save the Agent harmless from any and all costs, expenses, attorney's fees, suits, liabilities, damages from or connected with the management of the property by Agent, or the performance or exercise of any of the duties, obligations, powers, or authorities herein or hereafter granted to Agent.

"Owner shall not hold Agent liable for any error of [judgment], or for any mistake of fact or law, or for anything which Agent may do or refrain from doing hereinafter, except in cases of willful misconduct or gross negligence.

"Owner agrees to carry, at Owner's expense, Workers Compensation Insurance for Owner's employees. Owner also agrees to carry, at Owner's expense, bodily injury, property damage and personal injury public liability insurance in the amount of not less than $500,000 combined single limit for bodily injury and property damage. The policy shall be written on a comprehensive general liability form and shall name the Agent as additional insured.

"Owner shall immediately furnish Agent with a certificate of Insurance evidencing that the above coverage is in force with a carrier acceptable to Agent. In the event Agent receives notice that said insurance coverage is to be [canceled], Agent shall have the option to immediately cancel this agreement."

The final two paragraphs in this section set forth the obligation of the owner to pay any expenses incurred by the property manager in performing its duties.

■ We agree with the trial court that this language is a general indemnity provision and does not expressly address whether Kwock would fully indemnify Edmondson against third party claims generated as a result of Edmondson's own negligence. The first paragraph quoted is very similar to the examples listed in *MacDonald & Kruse, Inc. v. San Jose Steel Co., supra,* 29 Cal.App.3d 413, 419–420, as Type II indemnity provisions and very similar to the language *Rossmoor* characterized as a "general" indemnity clause. There is no explicit agreement to indemnify claims arising out of Edmondson's active negligence. These types of clauses do not cover active negligence by the indemnitee. Language imposing this liability must be express and unequivocal so that the contracting party is advised fully in definite terms that it has agreed to indemnify the active negligence of the other party. (*Ralph M. Parsons Co. v. Combustion Equipment Associates, Inc.* (1985) 172 Cal.App.3d 211, 227 [218 Cal.Rptr. 170].)

We agree with the trial court that the second quoted paragraph does not convert the general language of the first paragraph into an express agreement to indemnify even in cases of active negligence. The second paragraph addresses the relationship between Edmondson and Kwock and does not extend to third party claims. It is no more related to the first paragraph than is the third, which addresses workers' compensation, and the last paragraphs which address payment of expenses. In order to convert the first paragraph to a "Type I" indemnity provision covering active negligence, there must be explicit language tying the two paragraphs together, as there was in *Hartford.* There the contract indemnity provision stated that nothing in the insurance policies would limit the indemnification provided under the contract and included all claims against the indemnitee " 'except the sole negligence or willful misconduct' " of the indemnitee. (*Hartford, supra,* 123 Cal.App.4th at p. 289.) This language was in the same paragraph as the indemnification language and without question applied to the same topic. That is not the case here. "[A]n indemnity agreement may provide for indemnification against an indemnitee's own negligence, but such an agreement must be clear and explicit and is strictly construed against the indemnitee." (*Rossmoor, supra,* 13 Cal.3d at p. 628.)

■ Farmers argues that whether the indemnity provision is a Type II or Type I provision is a red herring in this case because the underlying action settled without a determination of the liability issue. It is true the personal action settled, but the issue of Edmondson's liability was submitted to the trial court. The trial court expressly found that Edmondson's alleged negligence was active, not passive. The trial court, after reviewing the evidence

before it, concluded that Edmondson was actively negligent while Kwock was passively negligent. This finding is supported by the record evidence. (*City and County of San Francisco v. Cobra Solutions, Inc.* (2006) 38 Cal.4th 839, 848 [43 Cal.Rptr.3d 771, 135 P.3d 20] [if trial court resolved disputed factual issues, reviewing court should not substitute judgment for trial court's express or implied findings supported by substantial evidence].) Although the personal injury complaint may not have specified whether Edmondson's alleged negligence was active or passive, the evidence relied upon by the parties and presented at trial supports the trial court's finding. Edmondson had notice prior to the fall that children generally, and the injured child specifically, had been playing on the shed roof, but failed to take immediate preventive action. There is evidence that resident manager "Mickey" had told Amber to get off the roof in the past, and that resident manager Maria Hernandez had called and told Edmondson the day prior to the accident that the children were playing on the roof. The failure to take action when there is knowledge and a contractual duty to act is active negligence. (*Rossmoor, supra*, 13 Cal.3d at p. 629.) ■ Travelers concludes that, unless it can be determined with certainty that the indemnity provision will apply, there is no basis upon which to bar equitable contribution. In other words, the insurance company seeking to defeat a claim of equitable contribution must prove that the indemnification agreement would bar any recovery between the insureds before it can successfully claim equitable contribution would negate the negotiated contract between the insureds. (*Travelers, supra*, 93 Cal.App.4th at p. 1158.)

■ In the absence of any contractual provision converting Farmers's primary policy to an excess policy, we agree with the trial court and will affirm its application of the general rules of equitable contribution. Since both Farmers and Capital issued primary insurance policies covering the same risk at the same level of insurance, Farmers must pay its fair share of the liability paid by Capital in settlement of the personal injury action. The trial court apportioned the responsibility to 50 percent for each party. The apportionment has not been challenged on appeal, and we see no reason to disturb the trial court's conclusion that this is a fair apportionment.

*II. Remaining contentions*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[*]See footnote, *ante*, page 197.

## *DISPOSITION*

The judgment is affirmed. Costs on appeal are awarded to Capital.

Cornell, J., and Hill, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 3, 2008, S158576.