[No. A053279. First Dist., Div. Three. Aug. 31, 1992.]

STATE FARM FIRE AND CASUALTY COMPANY, Plaintiff, Cross-defendant and Respondent, v.
ELIZABETH N., a Minor, et al., Defendants and Appellants;
MELODY J., a Minor, et al., Defendants, Cross-complainants and Appellants.

1234

COUNSEL

Knutsen & Smithwick and George T. Smithwick for Defendants, Cross-complainants and Appellants.

Taylor & Meadows and Michael D. Meadows for Defendants and Appellants.

Haims, Johnson, MacGowan & McInerney and Gary R. Johnson for Plaintiff, Cross-defendant and Respondent.

OPINION

CHIN, J.—This appeal's sole issue is whether multiple instances of negligent care and supervision, which allowed several children to be repeatedly molested, constituted multiple occurrences under a State Farm Fire and Casualty Company (State Farm) insurance policy. State Farm's policy had a liability limit of $100,000 per occurrence and stated that all bodily injury resulting from continuous or repeated exposure to the same general conditions would be deemed the result of one occurrence. The trial court held that the insured's acts and omissions were one occurrence under the policy as to each child.

After reviewing the facts and relevant insurance policy language, we conclude that the insured's liability to each child was one occurrence because each child's injuries resulted from repeated exposure to substantially the same general conditions. Therefore, we affirm the judgment.

## FACTS

State Farm initiated this action for a declaration of its rights and obligations regarding indemnification of its insured, Lynn Lynn, for stipulated judgments entered in three underlying cases. Some of the judgments were partially satisfied. State Farm sought to determine whether it had to pay any additional amounts to the plaintiffs in the underlying actions. Appellants, plaintiffs in the underlying actions and the defendants in State Farm's suit, are Michael and Cindy J. and their daughters, Melody and Shannon, and Jesse and Sindy N. and their daughter, Elizabeth. The parties submitted the declaratory relief action on an agreed statement of facts, restated here in relevant part.

State Farm insured Lynn under a homeowner's policy that included coverage for personal liability to third parties. From October 1981 through

October 1985, Lynn provided child care services to Melody and Shannon at her home, where she lived with her husband, Byron Lynn. During September and October 1985, Lynn provided the same services to Elizabeth. The children's parents usually took them to Lynn's residence early in the morning and picked them up again late in the afternoon. Lynn provided child care services, including supervision and meals, for other children as well.

Lynn occasionally left the house to run errands such as taking some of the children to and from school. When Lynn ran errands, she left the children at the house with her teenage daughter, if she was home, or with Byron. Byron's work schedule frequently allowed him to be at home during the day.

In late September or early October 1985, the J.'s and N.'s discovered facts suggesting that their children had been in sexual contact with Byron. The children were examined by a pediatrician, who found physical evidence that the girls had been sexually molested over a period of a month or more. The stipulated facts include that on certain occasions when the children were left in Byron's presence, he sexually molested them.[1] Lynn denied any knowledge of Byron's actions with the children.

The N.'s and the J.'s each filed civil suits for their children against Lynn and Byron. The N.'s brought a third action against Byron and Lynn for the N.'s own distress caused by the molestation of Elizabeth and another of their children.

During negotiations to conclude the underlying actions, State Farm and appellants agreed to several points, including: (1) the parents' claims are not separate from their children's claims for purposes of State Farm's liability limits; (2) State Farm waived coverage limitations and defenses except whether Lynn's acts and omissions required State Farm to pay more than the $100,000 per occurrence liability limit of Lynn's policy to each of the children; and (3) the stipulated judgments against Lynn were based on her acknowledgement of having negligently failed to provide adequate care and supervision for the children.

The liability coverage provisions of the policy, designated as "COVERAGE L," stated: "If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, we will: [¶] 1. pay up to our limit of liability for the damages for which the insured is legally liable; and [¶] 2. provide a defense at our

---

[1]Criminal charges were brought against Byron, who pleaded guilty to one count of violating Penal Code section 288, subdivision (a), relating to lewd acts with a child under the age of 14. Byron was sentenced to three years in prison.

expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages resulting from the occurrence equals our limit of liability."

In a separate section titled "CONDITIONS," State Farm's policy stated: "Limit of Liability. The Coverage L limit is shown in the Declarations. This is our limit for all damages from each occurrence regardless of the number of insureds, claims made or persons injured. All bodily injury and property damage resulting from any one accident or from continuous or repeated exposure to substantially the same general conditions shall be considered to be the result of one occurrence." The declarations page of the policy stated that personal liability coverage was limited to $100,000 for each occurrence. The policy contained no further definition or discussion of the meaning of "occurrence."

## DISCUSSION

██ When, as here, an insurance policy interpretation is based on stipulated evidence, the appeal from the judgment presents a question of law that is subject to our independent determination. We are not bound by the trial court's decision; our duty is to resolve the question under the applicable principles of law. (*Transport Indemnity Co. v. Royal Ins. Co.* (1987) 189 Cal.App.3d 250, 253 [234 Cal.Rptr. 516]; *Royal Globe Ins. Co. v. Whitaker* (1986) 181 Cal.App.3d 532, 536 [226 Cal.Rptr. 435].)

██ Insurance contract interpretation is governed by the parties' mutual intent when the contract was made, an intent found, if possible, solely in the contract language. (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 821-822 [274 Cal.Rptr. 820, 799 P.2d 1253].) We apply the clear and explicit meaning of the written provisions, interpreted in their ordinary and popular sense unless the parties intended a special or technical meaning by using specially crafted language. (*Id.*, at p. 822.) If, in light of the whole contract and the case's circumstances, a provision is reasonably susceptible to two or more unstrained constructions, the provision will be found to be ambiguous. (*Producers Dairy Delivery Co. v. Sentry Ins. Co.* (1986) 41 Cal.3d 903, 912, 916, fn. 7 [226 Cal.Rptr. 558, 718 P.2d 920].) Ambiguities normally are resolved by adopting a reasonable interpretation that affords coverage to the insured. (*AIU Ins. Co., supra*, at p. 822.)

██ Appellants and State Farm agree that the number of occurrences depends on the cause of injury rather than the number of injurious effects. (Cf. *Hyer v. Inter-Insurance Exchange, etc.* (1926) 77 Cal.App. 343, 350 [246

P. 1055] ["Where, as here, one negligent act or omission is the sole proximate cause, or *causa causans*, there is, as a general rule, but one accident, even though there be several resultant injuries or losses."].) The language of State Farm's policy compels the same conclusion because the relevant provisions plainly refer to an occurrence as an event from which damages result. Further, State Farm's policy clearly states that the per-occurrence limit is the "limit for all damages from each occurrence regardless of the number of insureds, claims made or persons injured."

Appellants argue that the number of occurrences is determined by examining the number of separate, discrete negligent acts or omissions committed by Lynn. Relying on *Mason* v. *Home Ins. Co. of Illinois* (1988) 177 Ill.App.3d 454 [532 N.E.2d 526, 529], appellants contend that each time Lynn left the children in Byron's care, the act created additional exposure to liability and constituted a separate occurrence.

In *Mason*, the insured owned and operated a restaurant. (*Mason* v. *Home Ins. Co. of Illinois*, *supra*, 532 N.E.2d at p. 527.) The insurer agreed to pay losses the insured sustained " '. . . by reason of the liability imposed upon the insured by law arising out of an occurrence . . . .' " (*Ibid.*) The policy also stated that all damages arising from continuous or repeated exposure " '. . . to substantially the same general conditions shall be considered as arising out of one occurrence.' " (*Ibid.*) Over a three-day period, the insured served to customers sandwiches that caused botulism because of contaminated sauteed onions. (*Ibid.*) The appellate court rejected the argument that for determining the number of occurrences, there was one cause of injury—improper preparation of the onions. (*Id.*, at p. 529.) Instead, the court concluded that the act for which the insured incurred liability was serving contaminated food to a customer, which created additional liability and constituted a separate occurrence under the policy each time it happened. (*Ibid.*) The *Mason* court observed: "No plaintiff was subjected to either a continuous or repeated exposure to conditions causing injury. These circumstances did not present one uninterrupted and continuing cause, but several distinct acts—individual sales to separate patrons over a three day period—each of which resulted in exposure to liability." (*Ibid.*)

In *Mason*, each customer suffered one injury because of one act—being served tainted food on one occasion. This appeal presents a different case because each child suffered repeated injury because of repeated acts—being left several times in the care of a child molester. Neither *Mason* nor the other

cases cited by appellants[2] address the situation where one person suffers several injuries because of repeated instances of the same negligent act. Thus, none of those cases concern the issue before us, which is interpretation of the "continuous or repeated exposure to substantially the same general conditions" language.

We cannot accept appellants' contention that each act that creates additional liability exposure necessarily constitutes a separate occurrence under the policy. Adopting appellants' broad proposition would nullify the clear language of the policy's limit-of-liability clause. The rules of insurance policy interpretation, summarized above, do not permit that result.

The limit-of-liability clause states, in pertinent part: ". . . All bodily injury . . . resulting from . . . continuous or repeated exposure to substantially the same general conditions shall be considered to be the result of one occurrence." The stipulated facts establish that Lynn negligently failed to provide adequate care and supervision for the children, which resulted in repeated molestation of the children by Byron. Therefore, the multiple injuries suffered by each child resulted from repeated exposure to substantially the same general conditions. Even if each injury Byron inflicted on a child resulted from a new negligent act by Lynn, each act of negligence by Lynn was substantially the same—a failure to care for and supervise the child adequately.

Appellants contend each injury was not the result of substantially the same general conditions because there was no continuity of conditions. In appellants' view, there was time between each incident for Lynn to realize what was happening and prevent a recurrence. From this premise, appellants argue that the foreseeability of harm was different for each injury, and therefore the conditions for each injury could not have been substantially the same. However, the record does not support appellants' suggestion that Lynn's awareness in fact changed over time. Lynn denied any knowledge of Byron's actions against the children. That denial, and Lynn's acknowledgment of negligent supervision, mean that Lynn should have known of Byron's danger to the children. It does not mean that her actual awareness of the danger changed. There is no evidentiary basis for appellants' contention that the children's injuries did not result from substantially the same general conditions—Lynn's negligence in failing to provide adequate care and supervision for the children.

---

[2]The liability insurance cases cited by appellants are: *Home Indem. Co.* v. *City of Mobile* (11th Cir. 1984) 749 F.2d 659; *Michigan Chemical Corp.* v. *American Home Assur. Co.* (6th Cir. 1984) 728 F.2d 374; *Dow Chemical Co.* v. *Associated Indem. Corp.* (E.D.Mich. 1989) 727 F.Supp. 1524. An additional case relied on by appellant, *American Indem. Co.* v. *McQuaig* (Fla.Dist.Ct.App. 1983) 435 So.2d 414, did not address a policy containing the "continuous or repeated exposure to . . . conditions" language.

The judgment is affirmed.

Merrill, Acting P. J., and Werdegar, J., concurred.