**WESTPORT INSURANCE CORPORATION,**
**Plaintiff,**

v.

**CALIFORNIA CASUALTY MANAGEMENT CO.,**
**Defendant.**

**Case No. 3:16–cv–01246–WHO**

United States District Court,
N.D. California.

Signed April 7, 2017

Adam H. Fleischer, Michael H. Passman, BatesCarey, LLP, Mark G. Sheridan, Chicago, IL, Grant D. Henderson, William Clayton Crawford, Jr., Foland, Wickens, Eisfelder, Roper & Hofer, PC, Kansas City, MO, Michael Kenneth Johnson, Lewis Brisbois Bisgaard & Smith LLP, San Francisco, CA, for Plaintiff.

Derek H. Mackay, Brown & James, PC, Kansas City, MO, Mark Giovanni Bonino, Hayes, Scott, Bonino, Ellingson, & McLay, LLP, Redwood City, CA, for Defendant.

## ORDER GRANTING WESTPORT'S MOTION FOR SUMMARY JUDGMENT AND DENYING CALIFORNIA CASUALTY'S MOTION FOR SUMMARY JUDGMENT

Re: Dkt. No. 61, 67

William H. Orrick, United States District Judge

### INTRODUCTION

Plaintiff Westport Insurance Corporation ("Westport") provided liability and ex-

cess insurance policies for the Moraga School District in California (the "School District"), including coverage for the School District's administrators. Defendant California Casualty Management Company ("California Casualty") also provided excess coverage for certain school administrators in the School District. After a School District teacher sexually molested three students, the students sued the School District and three of its administrators (the "Administrators") for negligent supervision. Westport funded the settlement of the claims alone after California Casualty declined to contribute and sued California Casualty for declaratory relief and equitable contribution.

Westport has moved for summary judgment, seeking declarations regarding each insurer's obligations and contribution from California Casualty. California Casualty cross-moved for summary judgment on ground that the School District (and its insurance) is obligated under California Government Code sections 825 and 825.4 to indemnify the Administrators as public employees. In the alternative, it argues (among other things) that its obligation to provide coverage was not triggered because its policies provided "extreme excess" coverage, and, at most, its contribution should be prorated.

California Casualty's policy is not as limited as it claims, and contribution is not

precluded by the California Government Code. For the reasons discussed below, Westport's motion is GRANTED and California Casualty's motion is DENIED. California Casualty shall contribute $2.6 million to Westport's funding of the settlement.

## BACKGROUND

### I. FACTUAL BACKGROUND

Three students (Does 1, 2, and 3) at Joaquin Moraga Intermediate School in the School District alleged that they were sexually molested by their teacher in the mid-1990s. Compl. ¶ 2 (Dkt. No. 1). When the students came forward in 1996, the teacher killed himself. *Id.* In 2013, the students sued the Administrators and the School District for negligent supervision of the teacher.[1] *Id.* ¶¶ 10–22. Does 1 and 2 filed one lawsuit against the Administrators and the School District in January 2013. *Id.* ¶ 10; *see* Does 1 and 2 Compl. (DeLonay Aff. ISO Westport's Mot., Ex. 6, Dkt. No. 68–6). Doe 3 filed another lawsuit against the Administrators and the School District in the same month. Compl. ¶ 19; *see* Doe 3 Compl. (DeLonay Aff., Ex. 7. Dkt. No. 68–7).

The students alleged that the teacher had molested them in the following school years:

| | 1993-1994 School Year | 1994-1995 School Year | 1995-1996 School Year | 1996-1997 School Year |
|---|---|---|---|---|
| **Doe 1** | X | X | X | |
| **Doe 2** | | | X | X |
| **Doe 3** | | | | X |

Compl. ¶¶ 12–14, 16–17, 21; *see also* Westport's Mot. for Summ. J. at 9 ("Westport's

---

**1.** California Casualty's Request for Judicial Notice of the complaints is GRANTED. *See* Dkt. No. 62.

Mot.")(Dkt. No. 67).[2]

Westport provided insurance for the School District via two policies of primary general liability insurance ("Westport Primary Policies") under which the Administrators were also insured. Compl. ¶¶ 23–30; DeLonay Aff. ¶ 2.[3] One of the Westport Primary Policies was effective from October 1, 1991 through October 1, 1994, and the other from October 1, 1994 through October 1, 1997. *Id.* ¶¶ 24–25; *see* Westport 1991–1994 Policy (DeLonay Aff., Ex. 1, Dkt. No. 68–1); Westport 1994–1997 Policy (DeLonay Aff., Ex. 2, Dkt. No. 68–2). According to Westport, the Primary Policies indicate a limit of liability of "$1,000,000 each occurrence." Westport 1991–1994 Policy at 000008. Westport also issued to the School District a series of policies of excess liability insurance ("Westport Excess Policies"). DeLonay Aff. ¶ 8. One of the excess policies was effective from October 1, 1991 to October 1, 1994; the other three were effective for consecutive one-year periods starting October 1, 1994. Compl. ¶ 27; *see* Westport Excess Policy Renewal (DeLonay Aff., Exs. 4, Dkt. No. 68–4); Westport Later Excess Policy (DeLonay Aff., Ex. 5, Dkt. No. 68–5).

In contrast with Westport, California Casualty provided only excess liability insurance that covered the Administrators, not the School District. Compl. ¶ 3; *see* California Casualty 1994–1995 Policy (Sheridan Decl. ISO Westport's Mot., Ex. 2, Dkt. No. 69–2); California Casualty 1993–1997 Excess Policies (Moreno Decl.

¶ 6, Ex. E, Dkt. No. 65–2 at 47). California Casualty issued successive annual liability policies ("California Casualty Policies") to the Association of California School Administrators and the Association of California Community College Administrators. Compl. ¶ 31.

The California Casualty Policies were in effect from at least July 1, 1994, to at least July 1, 1997. Compl. ¶ 32; *see* California Casualty Excess Policies. Westport alleges that each of the California Casualty Policies contains "substantially similar" language. Compl. ¶ 34. The policy defines the term "Insured," in relevant part, as "[a] member of the Associate of California School Administrators who is employed by a school board, board of trustees or other similar governing body of an educational unit." *See* California Casualty 1994–1995 Policy (Sheridan Decl., Ex. 2 at 109–10). The policy includes the following provisions:

**COVERAGES AND LIMITS OF LIABILITY**

Coverage A. Administrator Excess Liability

$150,000.00 per occurrence, Over $1,000,000.00 of Underlying Primary Layer/$2,000,000.00 aggregate per annual policy period

[. . .]

**III. COVERAGES**

In this section the Company indicates the coverages provided, subject to the exclusions, limits of liability and other terms of this policy.

---

**2.** California Casualty claims that Westport should pay for five policy periods since the policy begins on October 1 of each year and does not coincide with the academic year. California Casualty's Mot. 23; DeLonay Aff., Ex. 1, 2, 4. According to Doe 1's original complaint, the alleged molestation did not begin until "the middle of the [1993–1994] school year." DeLonay Aff., Ex. 6 at 17. Since

the "occurrence" happened in the middle of the school year and not at the beginning of the school year, only four policy periods are at issue.

**3.** A predecessor company issued each of Westport's relevant policies. Compl. ¶¶ 23, 27; DeLonay Aff. ¶ 2.

A. ADMINISTRATORS' EXCESS LIABILITY. The Company agrees to pay all damages in excess of the required underlying primary collectible insurance or self-insurance which the insured shall become legally obligated to pay as a result of any claim arising out of an occurrence in the course of the insured educational employment activities, and caused by any acts or omissions of the insured, or any other person for whose acts the insured is legally liable, not to exceed the limits of liability stated in the Declarations for this coverage.

[ . . . ]

IV. LIMITS OF LIABILITY

The combined limits of liability for each coverage stated in the Declarations are the limits of the Company's liability to each Insured for all damages arising out of one occurrence, except as provided in Coverage A, additional coverages, but in no event shall the Company's liability be more than $250,000 for all damages and costs of defense arising out of one occurrence. The fact that there may be multiple claims against the Insured as a result of the occurrence shall not operate to increase the limit of the Company's liability under this policy. The aggregate liability for all damages for all Insureds occurring during any one annual policy period shall not exceed $2,000,000.00.

[ . . . ]

VII. EXCLUSIONS

A. OTHER INSURANCE. At the time of an occurrence there must be underlying primary collective insurance or self-insurance available to the insured; particularly the insurance or self-insurance provided on behalf of the insured pursuant to Sections 35208, 35214, 72506 and 72511 of the Education Code of the State of California; or pursuant to the provisions of Sections 825 and 825.4 of the Government Code of the State of California; or insurance or self-insurance provided on behalf of the insured by any public entity, school district, governing board, board of trustees, board of regents or any agency established to maintain the California public school system or a four-year institution of higher education; with a minimum per occurrence limit of $1,000,000. There shall be no insurance afforded under this policy until the required $1,000,000 limit of liability afforded the Insured by such other insurance or self-insurance is exhausted. Insurance under this policy shall not be construed to be pro rata, concurrent or contributing with any other insurance or self-insurance which is available to the Insured.

*Id.*

Around September 3, 2013, the Doe 3 lawsuit settled for $1.8 million. Compl. ¶ 45; DeLonay Aff. ¶ 15. Around June 12, 2014, the Does 1 and 2 lawsuit settled for $14 million (or $7 million per student). Compl. ¶ 54; DeLonay Aff. ¶ 16. Westport asserts that the settlements more than exhausted the applicable limits on the Westport Primary Policies, thereby requiring California Casualty to contribute under the California Casualty Policies. Compl. ¶¶ 46–47, 54–55. When California Casualty refused to contribute, Westport paid the remainder of the settlements from the Westport Excess Policies. *Id.* ¶¶ 56–57; DeLonay Aff. ¶¶ 15–16.

## II. PROCEDURAL HISTORY

Westport initiated this action on April 13, 2015. Dkt. No. 1. The complaint alleges two causes of action against California Casualty, declaratory relief and equitable contribution. Compl. ¶¶ 73–81. The parties agree that California law governs both causes of action. *See, e.g.,* Mot. for J. on the Pleadings at 10 n.2 (Dkt. No. 40);

Opp'n to Pl.'s Mot. for J. on the Pleadings at 1 n.1 (Dkt. No. 45).

Westport asserts that California Casualty "refused to satisfy its contractual obligations to pay for a portion of [the] settlement amount exceeding $1 million per occurrence." Compl. ¶ 75. It seeks three declarations: (i) California Casualty's coverage immediately triggered upon exhaustion of the Westport Primary Policies; (ii) California Casualty's coverage "does not pro rate or contribute with the coverage provided by the Westport Excess Policies," and instead must "exhaust before the coverage provided by the Westport Excess Policies is triggered," and (iii) upon exhaustion of the Westport Primary Policies, California Casualty must "pay up to a full per occurrence policy limit for each Administrator in connection with each underlying Doe plaintiff in each year that California Casualty's coverage applied." Id. ¶ 76. Westport summarizes the third of these declarations as a finding that the "$150,000 per occurrence" limit of the California Casualty Policies applies (i) per student, (ii) per policy period, (iii) per Administrator. Westport's Mot. for Summ. J. at 20 ("Westport's Mot.")(Dkt. No. 67).

In support of the equitable contribution cause of action, Westport asserts that it "paid a loss that is and was rightfully the obligation of California Casualty," and that it "has a right of equitable contribution against California Casualty to recover that share of the settlements paid by Westport that should have been paid by California Casualty." Compl. ¶¶ 80–81.

On February 21, 2017, California Casualty moved for summary judgment, and Westport filed its motion the following day. Dkt. Nos. 61, 67. I heard argument on March 29, 2017.

## LEGAL STANDARD

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant makes this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." Id. The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. Anderson v. Liberty Lobby, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

On summary judgment, the Court draws all reasonable factual inferences in favor of the non-movant. Id. at 255, 106 S.Ct. 2505. In deciding a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Id. However, conclusory and speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary judgment. See Thornhill Publ'g Co., Inc. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

California Casualty contends that Westport Insurance lacks a basis for a claim of contribution and refutes liability for any of the claims asserted by Westport since:

- Westport did not allocate the amount being paid on behalf of the school

district, the school board, and Administrators; ·

- Westport cannot prove California Casualty's required payment amount;

- Government Code Sections 825 and 825.4 bar Westport's claims;

- Westport's Primary and Excess Policies adequately fulfill the settlement amounts;

- Westport failed in producing the obligatory completed copies of its policies.

California Casualty Mot. for Summ. J. at 2–3 ("California Casualty Mot.")(Dkt. No. 61).

In its motion, Westport requests a declaration that:

- California Casualty's coverage triggered upon exhaustion of Westport's Primary Polices;

- Once triggered, California Casualty's coverage does not share with any other excess insurance;

- California Casualty was obligated to pay up to a full limit for each Administrator in connection with each underlying Doe in each year that California Casualty's coverage applied.

Westport's Mot. at 3. Westport requests $2.7 million by way of equitable contribution. *Id.* at 4.

## I. EVIDENTIARY ISSUES

California Casualty raises two evidentiary issues that I address before discussing the merits.

---

**A. Westport Can Prove the Contents of its Policies with Secondary Evidence**

Neither Westport nor the Administrators were able to find complete copies of Westport's Primary and Excess Policies issued to the School District.[4] DeLonay Aff. ¶¶ 9, 12. Westport submitted copies of policies covering subsequent periods and an additional policy confirming the renewal of the excess policy. *Id.* at ¶ 9; *see* Excess Policy (DeLonay Aff. ¶ 10, Exhibit 4).[5] California Casualty takes issue with Westport's failure to produce "complete copies of the relevant policies." California Casualty Mot. at 20. Unable to find all of the original policies, Westport supplemented by locating copies of similar policies issued to different California school districts with similar claims. DeLonay Aff. ¶ 5. Michael J. DeLonay, the Vice President of Westport testified that the policies were "substantially similar." *Id.* at ¶ 6.

According to Evidence Code Section 1521(a), "the content of writing may be proved by otherwise admissible secondary evidence." Cal. Evid. Code § 152. Oral testimony is admissible "if the proponent does not have possession or control of a copy of the writing and the original is lost or has been destroyed without fraudulent intent on the part of the proponent of the evidence." Cal. Evid. Code § 1523. In addition, the "law does not require the contents of such documents [lost documents proved by secondary evidence] be proved verbatim." *Dart Indus., Inc. v. Commercial Union Ins. Co.*, 28 Cal.4th 1059, 1069, 124 Cal.Rptr.2d 142, 52 P.3d 79 (2002). In cases of lost insurance policies, the court approves the use of secondary evidence

---

4. Westport submitted the portions of the Primary Policies that were located, as well as a "California School Package Policy" to supplement. *See* DeLonay Aff. ¶¶ 2–5, Exs 1, 2, 3, Dkt. Nos. 68–1, 68–2, 68–3.

5. Because Exhibit 4 is difficult to read, Westport submitted an identical policy form later issued to the District. DeLonay Aff., Exhibit 5.

such as "an unsigned copy or [ ] oral evidence ... includ[ing] testimony of longtime ... employees of the insurer who were familiar with the policy's standard provisions, or copies of other policies sold at the same time which utilized similar provisions." *Rogers v. Prudential Ins. Co.*, 218 Cal.App.3d 1132, 1137, 267 Cal.Rptr. 499 (1990).

■ Since California law allows for secondary evidence, and there is no reason to believe that Westport's original policies were materially different from what it offered here, Westport's supplemental insurance policies are admissible. *See* Cal. Evid. Code § 152; Cal. Evid. Code § 1523; *Dart Indus.*, 28 Cal.4th at 1069, 124 Cal.Rptr.2d 142, 52 P.3d 79; *Rogers*, 218 Cal.App.3d at 1137, 267 Cal.Rptr. 499. The evidence submitted is sufficient for Westport to carry its burden of proof.

### B. Communications Prior to Mediation are Admissible

California Casualty objects to Westport's references to confidential mediation communications, including two letters prior to the mediation of the claims that discuss attendance at the mediation. California Casualty's Opp'n 20–21. The mediation confidentiality privilege in California Evidence Code § 1119 is inapplicable to those letters. The May 30, 2014 letter to Moreno from DeLonay and the June 10, 2014 letter from Moreno to DeLonay are not between the disputants in the mediation (which involved the students, District and Administrators), and they not only preceded the mediation but concerned whether California Casualty would attend the mediation. *See* 5/30/14 Letter to Moreno (DeLonay Aff., Exs. 8, Dkt. No. 68–8); 6/10/14 Letter from Moreno (DeLonay Aff., Ex. 9, Dkt. No. 68–9). While the letters are not important to the analysis in this case, they are admissible and to that extent California Casualty's objections are OVERRULED.

### II. CALIFORNIA GOVERNMENT CODE SECTIONS 825 AND 825.4 ARE INAPPLICABLE

California Casualty argues that California Government Code sections 825 and 825.4 preclude Westport's claims and require it, as the School District's insurer, to defend and indemnify the Administrators without outside assistance. California Casualty's Mot. at 15. California Labor Code section 2802[6] and California Government Code section 825[7] both state that an employer must defend and indemnify its employees acting within the scope of employment. Cal. Lab. Code § 2802; Cal. Gov't Code § 825. California Casualty contends that the Administrators are public employ-

---

6. The code section provides,
 An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.
 Cal. Lab. Code § 2802.

7. The code section provides,
 If an employee or former employee of a public entity requests the public entity to defend him or her against any claim or action against him or her for an injury arising out of an act or omission occurring within the scope of his or her employment as an employee of the public entity and the request is made in writing not less than 10 days before the day of trial, and the employee or former employee reasonably cooperates in good faith in the defense of the claim or action, the public entity shall pay any judgment based thereon or any compromise or settlement of the claim or action to which the public entity has agreed.
 Cal. Gov't Code § 825.

ees so the School District must defend and pay the entire settlement fee, without contribution. California Casualty's Mot. at 16; *See* Cal. Lab. Code § 2802; Cal. Gov't Code § 825.

In addition, California Government Code section 825.4 states that "if a public entity pays any claim or judgment against itself or against an employee or former employee of the public entity, or any portion thereof, for an injury arising out of an act or omission of the employee or former employee of the public entity, he is not liable to indemnify the public entity." Cal. Gov't Code § 825.4. "A principal purpose of the indemnification statutes is to assure 'the zealous execution of official duties by public employees.'" *Farmers Ins. Grp. v. Cty. of Santa Clara*, 11 Cal.4th 992, 1001, 47 Cal.Rptr.2d 478, 906 P.2d 440 (1995).

California Casualty relies on *Pacific Indemnity v. American Mutual Pacific* to argue that a government entity's insurer cannot seek contribution from a government employee's insurer for amounts paid in settlement or judgment, but it is distinguishable. California Casualty Mot. at 17 (citing *Pac. Indem. Co. v. Am. Mut. Ins. Co.*, 28 Cal.App.3d 983, 105 Cal.Rptr. 295 (1972)). In that case, the California Court of Appeal affirmed the trial court's holding that the Government Code sections precluded the University of California's insurer from seeking contribution from an employee's insurer after it settled a malpractice action brought against the employee. *Id.* at 985, 105 Cal.Rptr. 295. The court found that the primary responsibility to indemnify and defend lay with the University, and "it [could] only secure contribution if there [was] other insurance covering the obligation of the [University]." *Id.* at 992, 105 Cal.Rptr. 295.

■ This situation differs in several respects. First, the policy was issued to the Association of California School Adminis-

trators, not the administrators personally, and so the administrators' personal liability—or that of their personal insurer—was never at stake. Thus the same policy considerations are not at play. *Cf. id.* at 992, 105 Cal.Rptr. 295 ("[Public entity insurer] has no rights under the subrogation clause, because any attempt by the [University] to secure contribution from its employee or *his personal insurer* would violate the legislative policy which gave rise to the provisions. . . .")(emphasis added); *id.* at 991, 105 Cal.Rptr. 295 ("To the extent that the ardor of public employees might be affected by the threat of personal liability, these fears will be allayed by the indemnification provisions."). This fact also minimizes the *Pacific Indemnity* court's uneasiness regarding risk-shifting and increased premiums for employees. *See id.* at 993, 105 Cal.Rptr. 295 ("[T]his tendency [to shift responsibility to the employee] would result in less risk to the employer's insurer it should result in lower premiums to the public entity, and, in turn, lead the public body to encourage its employees to carry personal insurance, at increased cost to the employees.").

Second, a decision granting Westport a right of contribution against California Casualty would not "put[ ] the burden of furnishing primary insurance on the wrong party," *id.* at 995, 105 Cal.Rptr. 295, because the district (through Westport) provided the primary insurance. Indeed, California Casualty at one point admitted that its obligations would kick in after the primary layer was exhausted. *See* 12/12/12 Letter for California Casualty (Sheridan Decl. ¶ 4, Ex. 3, Dkt. No. 69–3)("The California Casualty policy issued to the Association of California School Administrators is an excess policy whose obligation to defend and indemnify does not arise until after the primary layer is exhausted."). It did not take the position that the Govern-

ment Code precluded it from *ever* paying, rather, it asserted that "the primary layer is required as a condition precedent by the terms of the California Casualty policy, itself, and is required as a matter of public policy by the California Government Code...." *Id.* Westport provided a defense and indemnified the Administrators. It only paid more than the $1 million per occurrence underlying layer because it *separately* provided an excess policy, whose coverage would be triggered only after all other available excess insurance was paid. *See* Westport's Excess Policy (DeLonay Aff., Ex. 5 at WEST 000085, 88.)("the insurance provided by this policy will apply in excess of other collectible insurance."). So in addition to the policy concerns being alleviated, it cannot be said that Westport "has paid out no more than it undertook to do." *Pacific Indemnity*, 28 Cal.App.3d at 992, 105 Cal.Rptr. 295.

Third, the California Casualty policy was limited to claims arising in the course of employment, as opposed to the personal policy in *Pacific Indemnity* "which would cover [the public employee's] acts or omission which were not within the scope of his employment...." *Id.* That policy, therefore, retained some value. According to California Casualty, its excess policy would cover claims exceeding the District's coverage (including other excess policies), but those instances are admittedly rare, and perhaps nonexistent for "urban counties ... that can afford to carry substantial insurance coverage for its public school districts." California Casualty Reply at 4. If California Casualty's position was accepted, one would question the illusory nature of California Casualty's excess policy.

Finally, the *Pacific Indemnity* court concluded by distinguishing a case where the California Court of Appeal rejected an employee's insurer's argument that allow-

ing contribution was contrary to the immunity statutes. 28 Cal.App.3d at 995, 105 Cal.Rptr. 295 (distinguishing *Oxnard Union High Sch. Dist. v. Teachers Ins. Co.*, 20 Cal.App.3d 842, 99 Cal.Rptr. 478 (1971)). It found that decision inapplicable "where there is neither concession nor contract provision which renders the employee's insurance available for the satisfaction of the public entity's obligation to the victim or its obligation to its employee." *Id.* Here California Casualty arguably conceded (through its 12/12/12 letter) and certainly contracted to provide insurance for the School District's obligation regarding the acts of the Administrators within the scope of their employment. Thus *Oxnard*'s rejection of the applicability of the immunity statutes is more on point.

For these reasons, the California Government Code does not preclude Westport from seeking contribution from California Casualty. Now I must examine the policy language to determine the right of contribution.

## III. CALIFORNIA CASUALTY'S EXCESS COVERAGE APPLIES IMMEDIATELY AFTER PAYMENT OF $1 MILLION PER CLAIMANT PER POLICY PERIOD

Westport argues that California Casualty's Policies were triggered upon exhaustion of Westport's $1 million underlying primary insurance. Westport's Mot. at 15. The policies specify that California Casualty Coverage A is an excess insurance coverage for administrators covering up to "$150,000 per occurrence, over $1,000,000.00 Underlying Primary Layer/$2,000,000.00 aggregate per annual policy period." California Casualty 1994–1995 Policy (Sheridan Decl., Ex. 2 at 109). Under "Coverages" it states, "[t]he Company agrees to pay damages in excess of the required underlying primary collectible in-

surance or self-insurance, which the insured shall become legally obligated to pay as a result of any claim arising out of an occurrence in the course of the Insured educational employment activities." *Id.* The "Exclusions" section stipulates, "[t]here shall be no insurance afforded under this policy until the required $1,000,000.00 limit of liability afforded the Insured by such other insurance or self-insurance is exhausted." *Id.* at 110. Westport insists that this language requires California Casualty to step in and cover the Administrators upon exhaustion of the $1 million primary insurance. Westport's Mot. at 15.

California Casualty disagrees. According to Eva Moreno, California Casualty's corporate representative, the excess coverage offered by California Casualty only applies upon exhaustion of *all* excess coverage. Moreno Dep. at 6:8–18, 36:2–7 (Sheridan Decl., Ex. 9, Dkt. No. 69-9). Specifically, California Casualty insists that Westport's excess insurance policy must be exhausted before triggering California Casualty's excess policy. California Casualty's Opp'n at 15.

Westport's excess policy was issued independently of the primary policies. DeLonay Aff. ¶ 8. The policy offers "excess insurance and follows the 'underlying insurance' except as otherwise stated in this policy." Westport's Excess Policy (DeLonay Aff., Ex. 5 at WEST 000085). The policy also provides, "if there is any other collectible insurance available to the insured that covers a loss that is also covered by this policy, the insurance provided by this policy will apply in excess of other collectible insurance." *Id.* at WEST 000088. Westport concedes that its Primary policies apply first, up to $1 million per occurrence. Westport's Mot. at 7–8. But once exhausted, California Casualty's excess policies kick in at $150,000 per occurrence, per administrator. *Id.* Upon exhaustion of California Casualty's policies, Westport's excess policies are triggered. *Id.*

| Westport Excess Policies |
| :---: |
| ($5m per occurrence, excess of "any other collectible insurance") |
| California Casualty Excess Policies |
| ($150k per occurrence, per administrator, "Over $1,000,000 of Underlying Primary Layer") |
| Westport Primary Policies |
| ($1m per occurrence, regardless of number of insureds) |

*Id.*

In addition to primary coverage, Westport insured the School District with excess coverage as did California Casualty. A primary policy is "one where liability attaches immediately upon the happening of the occurrence." *Edmondson Prop. Mgmt. v. Kwock*, 156 Cal.App.4th 197, 201, 67 Cal.Rptr.3d 243 (2007). In contrast, excess coverage, "attaches only after a pre-determined amount of primary coverage has been exhausted." *Id.* Both California Casualty's policy and Westport's secondary policy fall under the "excess coverage" category since both policies dictate that coverage attaches after the primary coverage exhausts. *See* California Casualty Excess Liability Policy (Moreno Decl. ¶ 6, Ex. E at E–129, Dkt. No. 65-2); Westport Excess Policy (DeLonay Aff., Ex. 5 at WEST 000085, Dkt. No. 68-5). California

Casualty presents several unpersuasive arguments that its policy qualifies as excess coverage over *all* other available polices.

## A. Premium Does Not Dictate Order of Coverage

California Casualty highlights its low premium of $1.00 per year, per Administrator, to urge that its policies provide "extreme" excess coverage, in excess of all other insurance. California Casualty Opp'n at 14; *see also* Moreno Dep. at 47:20–24 (Sheridan Decl., Ex. 9). Moreno contends that the premium is the "best evidence" that the policy was a "pure excess policy" with "very limited coverage." Moreno Dep. at 38:5–13. To underscore its position, California Casualty points to the higher premiums associated with Westport's Primary and Excess insurance policies, $715,006 and $98,312 respectively, whereas the aggregate premium on the 1994–95 California Casualty policy was $13,301 ($1 for each insured). Sheridan Decl., Ex. 2 at 107; Moreno Dep. at 47: 6–24.

California Casualty's argument is unfounded. First, it is undisputed that premium amounts do not dictate the priority of coverage, especially when policy terms are unambiguous.[8] But even if I did consider California Casualty's argument, Westport's $1 million Primary Policies should cost more than the Excess policies since it has the primary duty to defend and indemnify.

Further, Westport's excess coverage has a $5 million limit and covers a number of employees spanning nine school districts (approximately 3,500 individuals, according to Westport). Westport's Opp'n at 9 n. 9. Accordingly, Westport's excess coverage equates to a premium of $0.84 per insured individual, notably less than California Casualty's excess coverage premium rate per individual. *Id.* Even if the premium amount dictated which excess policy came first, California Casualty's premium per individual is actually higher than Westport's, so its coverage would precede Westport's.[9]

## B. Westport's Policies Do Not Include an "Escape Clause"

Next, California Casualty argues that Westport's Excess Policies contain an escape clause, which are generally not enforced due to public policy concerns. California Casualty Opp'n at 15–16; *see Edmondson*, 156 Cal.App.4th at 197, 67 Cal.Rptr.3d 243; *Underwriters of Interest Subscribing to Policy No. A15274001 v. ProBuilders Specialty Ins. Co.*, 241 Cal. App.4th 721, 730, 193 Cal.Rptr.3d 898 (2015); *Certain Underwriters at Lloyds, London v. Arch Specialty Ins. Co.*, 246 Cal.App.4th 418, 430, 200 Cal.Rptr.3d 786 (2016). An escape clause is an "attempt to convert primary coverage to excess coverage." *Edmondson*, 156 Cal.App.4th at 203,

---

8. Moreno herself admitted that the premium amount should not affect which policy pays first:

 Q: If it was determined that Westport charged less than a dollar per insured individual for its excess policy, would that change your view in any way as to which of those two excess policies should go first?
 A: No.
 Q: Because the amount of the premium does not affect that decision?
 A: Not to my mind.
 Moreno Dep. at 50: 8–16.

9. California Casualty also notes that its policy provides excess coverage to only the Administrators and not the School District, the teacher who allegedly committed the molestation, or the school board, while Westport Insurance covers a broad scope of individuals and entities including multiple school districts, boards, and employees. California Casualty's Opp'n at 14. California Casualty argues that the narrow scope of insured individuals means it is an excess policy over *all* available polices. *Id.* It provides no evidence or authority to support its position.

67 Cal.Rptr.3d 243. Escape clause problems arise when insurance clauses reduce "primary coverage obligation into a more limited excess liability." *Certain Underwriters at Lloyds, London v. Arch Specialty Ins. Co.*, 246 Cal.App.4th at 430, 200 Cal.Rptr.3d 786.

■ But this dispute centers around excess policies. *See* Westport's Reply at 2. There is no escape clause problem here. The *Certain Underwriters at Lloyds, London v. Arch Specialty Ins. Co.* court explicitly negated California Casualty's argument when it stated that insurance claims "expressly understood by both the insurer and the insured to be secondary to specific underlying coverage" were not subject to the policy concerns counseling against the enforceability of escape clauses. *Id.*

### C. Interpretation of the Policies

California law interprets insurance policies according to "general rules of contract interpretation[,]" including a directive to "give effect to the mutual intention of the parties as it existed at the time of contracting." Cal. Civ. Code § 1636; *TRB Investments, Inc. v. Fireman's Fund Ins. Co.*, 40 Cal.4th 19, 27, 50 Cal.Rptr.3d 597, 145 P.3d 472 (2006). Intent is inferred from the written provisions of the contract, Cal. Civ. Code § 1639, and the meaning of each contract should be interpreted in its "ordinary and popular sense." Cal. Civ. Code §.1644.

The court in *Carmel Development Company v. RLI Insurance Company* was presented with the issue of primary and excess insurance policy coverages when an injured employee sued both the general contractor and subcontractor. 126 Cal. App.4th 502, 506, 24 Cal.Rptr.3d 588 (2005). The general contractor had a primary commercial general liability policy issued by Reliance Insurance Company ("Reliance") and an excess liability policy from Fireman's Fund. *Id.* The subcontractor had a primary policy with Acceptance Insurance Company ("Acceptance") and a commercial umbrella policy with RLI. *Id.* Reliance and Fireman's Fund settled with the plaintiff and then sued Acceptance and RLI claiming they were obligated to contribute to the settlement; and RLI filed a cross complaint. *Id.* Both Fireman's Fund and RLI claimed its "other insurance" clauses only required contribution upon exhaustion of "all other insurance." *Id.* at 507, 24 Cal.Rptr.3d 588.

The court examined the policy as a whole and found that Fireman's Fund's policy served as an excess to the primary insurance since the policy read, "[w]e will pay on behalf of the insured those sums in excess of Primary Insurance." *Id.* at 510, 24 Cal.Rptr.3d 588. RLI's policy, on the other hand, specified its obligation arises only "for the ultimate net loss" and explicitly stated that its coverage stood in excess of scheduled and unscheduled underlying insurance. *Id.* at 510–11, 24 Cal.Rptr.3d 588. The court found that RLI had no obligation to contribute to the settlement since Fireman's Fund's policy was triggered after the primary policy. *Id.* at 516, 24 Cal.Rptr.3d 588. RLI's liability, on the other hand, applied in excess of "any other insurance." *Id.*

Like RLI, Westport's Excess Policies do not specify that they apply after the primary policy. *See* Westport's Excess Policy (DeLonay Aff., Ex. 5). The policy states that it follows the "underlying insurance" and will only apply in "excess of other collectible insurance." *Id.* at WEST 000085, 000088. In contrast, California Casualty's policies state that coverage applies upon exhaustion of the "$1,000,000 Underlying Primary Layer." California Casualty 1994–1995 Policy (Sheridan Decl., Ex. 2 at 109). Since there is no reference to "extreme" in the language of the policy, California Casualty must rely

on its own rationalization and testimony from its corporate representative. Moreno testified that "the intent of this policy is very restrictive, and it is simply to pay the extreme excess—I will call it extreme ... that is not a word in the policy; that is mine." Moreno Dep. at 58:5–7. When asked to clarify the reference to "extreme excess," Moreno conceded that the term was "nowhere in the policy" and was only an "Eva [Moreno] phrase." *Id.* at 89: 3–6.

Westport's interpretation of California Casualty's obligation has been consistent. It sent a letter to California Casualty alerting it to the "realistic possibility" that Westport would exhaust its full primary limits in settling the lawsuit at mediation. 5/30/14 Letter to California Casualty (DeLonay Decl., Ex. 8, Dkt. No. 68–8). Westport specifically stated that if such an event were to occur "California Casualty's coverage obligation would be triggered ... [and California Casualty] may then be called up to pay its full limits per year per insured to settle this matter." *Id.* On the other hand, Moreno had previously noted that California Casualty's "obligation to defend and indemnify does not arise until after the primary layer is exhausted", 12/12/12 Letter from California Casualty (Sheridan Decl., Ex. 3, Dkt. No. 69–3, p.2 of 14), a different view than California Casualty takes in this litigation.

The plain text of the policies clearly indicates that California Casualty's policy triggers upon exhaustion of Westport's Primary coverage. Once California Casualty's secondary policy exhausts, Westport's Excess Policies cover the remaining balance.

## IV. APPORTIONING LIABILITY AND COSTS

### A. California Casualty Must Share Costs

■ According to Westport, California Casualty's policy specifies that it does not share costs with any other insurance. Westport's Mot. at 19. California Casualty's policy states that the insurance "shall not be construed to be pro rata, concurrent or contributing with any other insurance or self-insurance which is available to the insured." California Casualty 1994–1995 Policy (Sheridan Decl., Ex. 2 at 110, Sec. VII.A). The December 12, 2012 Reservation of Rights letter confirmed this concept by stating that the policy is not "prorata, concurrent or contributing." 12/12/12 Letter from California Casualty (Sheridan Decl., Ex 3 at 6). Moreno also agreed in her deposition that "California Casualty will not pro rate or share—with other insurance." Moreno Dep. at 37:21–38:1. As such, California Casualty must pay up to its policy limit without contribution from other sources. Westport's excess insurance covers the rest of the costs upon exhaustion of California Casualty's limits. *See* Westport's Excess Policy (DeLonay Aff., Ex. 5).

### B. California Casualty's Limit Applies Per Student, Per Administrator, Per Policy Period

■ An "occurrence" is "defined by the event or events causing the injury rather than the injury itself." *Landmark Am. Ins. Co. v. Liberty Surplus Ins. Corp.*, No., 2014 WL 12558121, at *3 (C.D. Cal. Apr. 9, 2014). Westport argues that under California law, a tortfeasor's failure to supervise a child molester results in a separate "occurrence" for each child molested in each policy period. Westport's Mot. at 20; Westport's Reply at 10. But California Casualty contends that the molestation of multiple children must constitute one "occurrence" because the injuries were caused by the same negligent act—each administrator's failure to supervise the teacher. California Casualty Opp'n at 16.

California Casualty asserts that its policies specifically defined "occurrence" as "an event, including injurious exposure to conditions, which results in injuries and/or damage to one or more persons or legal entities other than the members and insureds under this policy during the policy period." California Casualty Excess Policy (Moreno Decl. ¶ 6, Ex. E at E–132). According to the Doe plaintiffs' original complaint, the defendants "failed to report these known instances of abuse to authorities as legally mandated ·by California state law ... [and] never terminated, suspended, disciplined, supervised, monitored, or even· credibly investigated" the teacher who allegedly sexually abused and molested the plaintiffs. Does 1· and 2 Compl. ¶ 13 (DeLonay Aff., Ex. 6). California Casualty contends that there is only one "occurrence" per year of. "hiring, supervis[ing], and retain[ing]" the teacher who molested the Doe plaintiffs. California Casualty's Mot. at 18. Consequently, it insists that the $150,000 per occurrence limit does not apply to each student but should apply once per Administrator per policy period.

Westport urges that California Casualty's argument is contrary to California law. Westport Reply at 11. It cites *State Farm and Casualty Company ·v. Elizabeth N.*, which awarded $100,000 ·per child, as a result of one occurrence—the negligent supervision of a child molester.[10] 9 Cal.

App.4th 1232, 12 Cal.Rptr.2d 327 (1992). The State Farm policy limited damages to those "from each occurrence regardless of the number of insureds, claims made or persons ·injured. All· bodily injury and property damage resulting from any one accident or from continuous or repeated exposure to substantially the same general conditions shall be considered to be the result of one occurrence." *Id.* at 1236, 12 Cal.Rptr.2d 327. Although the court was specifically focused on whether multiple acts of molestation resulted in multiple "failing to· supervise" occurrences, its decision necessarily entailed a finding that "multiple injuries ·suffered by each child" constituted a· separate occurrence within each policy period.[11] *Id.* at 1238, 12 Cal. Rptr.2d 327.

█ In an attempt to distinguish *Elizabeth N.*, California Casualty points to its policy language that a single "occurrence" can involve damage to "one or more persons." California Casualty Opp'n at 18. But the policy in *Elizabeth N.* similarly limited coverage "regardless of the number of insureds, claims made or persons injured." 9 Cal.App.4th at 1236, 12 Cal.Rptr.2d 327. The court still found that the policy provided coverage for the molestation of each child. *Id.* at 1238, 12 Cal.Rptr.2d 327. California Casualty fails to identify. any precedent supporting its· position. I do not ac-

---

10. Westport cites decisions in other jurisdictions reaching the same conclusion. Westport's Reply at 11–12; *see, e.g., Society of the Roman Catholic Church of the Diocese of Lafayette v. Interstate Fire & Cas. Co.*, 26 F.3d 1359, 1365 (5th Cir. 1994)(finding sexual abuse of multiple children caused by negligent supervision of priests resulted in a separate "occurrence" for each abused child in each policy period); *S.F. v. West Amer. Ins. Co.*, 250 Va. 461, 463 S.E.2d 450 (1995) (holding building manager liable for negligent hiring, retention, and supervision of worker who molested multiple children living in the building and finding a separate "occurrence"

under manager's insurance policy for each molested child in each period); *Gen. Accident Ins. Co. of Amer. v. Allen*, 708 A.2d 828 (Pa. ·Super. Ct. 1998)(failure to supervise resulting in the sexual abuse of three children required supervisor's insurer to pay three separate "per occurrence" limits, one for each child in each period).

11. The court framed the issue before it as interpreting the " 'continuous or repeated exposure to substantially the same general conditions' language." *Elizabeth N.*, 9 Cal. App.4th at 1238, 12 Cal.Rptr.2d 327.

cept that molestations of multiple children constitute the same occurrence, and California Casualty cited no case that so held. The California Casualty excess policies provide a separate $150,000 limit per child, per administrator, per policy period.[12]

### C. Allocation among Parties

California Casualty argues that its settlement responsibilities should only correspond to the alleged negligence of the Administrators and not the School District. California Casualty's Mot. 19. It contends that it is impossible to calculate how much each party owes since the settlement agreement did not allocate liability between the School District and Administrators. *Id.* at 20.

 In *United Services Automobile Association v. Alaska Insurance Company*, the California Court of Appeal held that if a liability insurer fails to provide coverage and defense, an insured may "make the best good faith settlement." 94 Cal.App.4th 638, 644, 114 Cal.Rptr.2d 449 (2001). "[W]hen a liability insurer denies coverage for a third party claim and abandons its insured, it relinquishes the right to object to the *manner* in which the claim is resolved by the insured or any other insurer providing coverage for the claim." *Id.* (emphasis added). *Id.* at 644, 114 Cal. Rptr.2d 449. Therefore, the court conclud-

ed that an excess insurer who refuses to provide coverage waives the right to "challenge the reasonableness of the primary insurer's settlement of the claim." *Id.* As such, California Casualty is still liable and cannot bring a claim challenging the reasonableness of the settlement allocation or the manner in which the claim was resolved. *See id.*

California Casualty is only responsible for providing coverage for the Administrators and not the School District. Accordingly, it is equitable for each of the four defendants to be responsible for 25 percent of the settlement. *See* Compl. ¶ 10. This means that California Casualty is responsible for providing excess coverage for 75 percent of the remaining settlement. See *Great Am. Ins. Co. v. Sequoia Ins. Co.*, 2016 WL 844819, at *1 (C.D. Cal. Mar. 1, 2016)(dividing liability "on an equal basis" among insurance companies and disregarding challenges from insurer who refused to participate in defense).

The Doe 1 and 2 lawsuit settled for $7 million each, and the Doe 3 lawsuit settled for $1.8 million. *Id.* DeLonay Aff. ¶¶ 15–16. Based on the reasoning above, California Casualty's liability to Westport is apportioned as follows:

### Allocation of Underlying Settlement

---

12. California Casualty makes an argument that Westport should also pay per occurrence, per student, per administrator, per policy period. California Casualty's Opp'n at 19. However, Westport's Primary Policies cover the School District and the Administrators as insureds under the policies. DeLonay Aff. ¶¶ 2,

8. The policies specify that "nothing herein shall operate to increase the Company's liability as set forth in this policy beyond the amount or amounts for which the Company would have been liable if only one person or interest had been named as insured." DeLonay Aff., Ex. 2 at WEST 000020.

| | 1993-94 Policy Period | 1994-95 Policy Period | 1995-96 Policy Period | 1996-97 Policy Period |
|---|---|---|---|---|
| Doe 1 $7 M | $2,333,333 | $2,333,333 | $2,333,333 | |
| Doe 2 $7 M | | | $3,500,000 | $3,500,000 |
| Doe 3 $1.8 M | | | | $1,800,000 |

Each defendant is liable "on an equal basis" (25 percent to each of the defendants). Therefore, the numbers due reduce by 25 percent.

### Allocation of Underlying Settlement Reduced by 25 Percent

| | 1993-94 Policy Period | 1994-95 Policy Period | 1995-96 Policy Period | 1996-97 Policy Period |
|---|---|---|---|---|
| Doe 1 $7 M | $1,750,000 | $1,750,000 | $1,750,000 | |
| Doe 2 $7 M | | | $2,625,000 | $2,625,000 |
| Doe 3 $1.8 M | | | | $1,350,000 |

Westport's Primary Policies cover the first $1 million for each claim in each policy period. Westport Policies (DeLonay Aff., Exs. 1–3). As such, $ 1 million is deducted from each of the boxes above.

### Allocation After Deducting Westport's $1 Million Primary Limit

| | 1993-94 Policy Period | 1994-95 Policy Period | 1995-96 Policy Period | 1996-97 Policy Period |
|---|---|---|---|---|
| Doe 1 $7 M | $1,750,000 -$1,000,000 $ 750,000 | $1,750,000 -$1,000,000 $ 750,000 | $1,750,000 -$1,000,000 $ 750,000 | |
| Doe 2 $7 M | | | $2,625,000 -$1,000,000 $1,625,000 | $2,625,000 -$1,000,000 $1,625,000 |
| Doe 3 $1.8 M | | | | $1,350,000 -$1,000,000.00 $ 350,000 |

California Casualty is responsible for paying $150,000 per occurrence, per administrator, per policy period, which equals up to $450,000 ($150,000 x 3 administrators) for each occurrence.

### California Casualty's Liability Based on 75 Percent of Underlying Settlements

| | 1993-94 Policy Period | 1994-95 Policy Period | 1995-96 Policy Period | 1996-97 Policy Period | Total $ Amount |
|---|---|---|---|---|---|
| Doe 1 $7 M | $450,000 ($150K x 3 Administrators) | $450,000 ($150K x 3 Administrators) | $ 450,000 ($150K x 3 Administrators) | | $1,350,000 |
| Doe 2 $7 M | | | $ 450,000 ($150K x 3 Administrators) | $ 450,000 ($150K x 3 Administrators) | $900,000 |
| Doe 3 $1.8 M | | | | $ 350,000 (up to $150K x 3 Administrators) | $350,000 |

Therefore, California Casualty's TOTAL LIABILITY is $2,600,000.

## CONCLUSION

Accordingly, Westport's motion for summary judgment concerning California Casualty's obligation to pay is GRANTED IN PART but DENIED as to the original contribution amount specified in its motion. *See* Westport's Mot. 4. California Casualty's motion for summary judgment is DENIED. Judgment shall be entered in accordance with this Order.

**IT IS SO ORDERED.**